UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTOPHER ANDRADE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 25-cv-13202-ADB |
| CITY OF BOSTON, | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Christopher Andrade ("Andrade") brings this civil rights action against the City of Boston ("City"), based on his November 10, 2024, arrest in Dorchester, Massachusetts.  [ECF No. 2-2 at 11–14 ("Am. Compl.")].  After the City moved to dismiss Andrade's operative complaint for failure to state a claim, [ECF No. 6], Andrade moved to amend his complaint, [ECF No. 13].  For the following reasons, the City's motion is **GRANTED** and Andrade's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

For purposes of the motions before it, the Court accepts as true all well-pleaded facts alleged in the amended complaint and the proposed second amended complaint and draws all reasonable inferences therefrom in the plaintiff's favor.  Lawrence Gen. Hosp. v. Cont'l Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024); Efron v. UBS Fin. Servs. Inc. of P.R., 96 F.4th 430, 437 (1st Cir. 2024).

In the early morning hours of November 10, 2024, Boston police officers stopped a car on Blue Hill Avenue in Dorchester, Massachusetts.  [Am. Compl. ¶ 3]; [ECF No. 13-1 ¶ 4].  The car's driver was a friend of Andrade's and Andrade was a passenger.  [Am. Compl. ¶¶ 3–4]; [ECF No. 13-1 ¶¶ 4–5].  The police asked for the driver's identification and for the car's windows to be fully rolled down.  [Am. Compl. ¶¶ 4, 6]; [ECF No. 13-1 ¶¶ 5, 7].  When the driver told the police that he had already provided sufficient information to the state troopers who had just issued him a citation, the police "continued to escalate the situation."  [Am. Compl. ¶¶ 5, 7]; [ECF No. 13-1 ¶¶ 6, 8].  During this interaction, Andrade "remained seated with his seatbelt on, and did not interfere with the officers' requests in any way."  [Am. Compl. ¶ 8]; [ECF No. 13-1 ¶ 9].  Nevertheless, the officers "forcibly removed" Andrade from the car, "used excessive force in detaining him, and handcuffed him despite his clear compliance."  [Am. Compl. ¶ 9]; [ECF No. 13-1 ¶ 10].  When Andrade asked why he was being detained, the officers did not provide an explanation.  [Am. Compl. ¶ 10]; [ECF No. 13-1 ¶ 11].  Andrade alleges that the City's "hiring, training, [and] disciplining procedures were not reasonably adequate to protect [him] and the public."  [ECF No. 13-1 ¶ 14].  He suffered injuries to his arms and emotional distress as a result of his encounter with the police.  [Am. Compl. ¶ 12]; [ECF No. 13-1 ¶ 13].

On December 12, 2024, Andrade served a presentment letter on the City pursuant to Mass. Gen. Laws ch. 258, § 4.  [Am. Compl. ¶ 13]; [ECF No. 13-1 ¶ 15].  The letter described the alleged events of November 10, 2024, noting that Andrade was "extremely concerned with how this incident reflects on the training and practices of [the City's police] department."  [ECF No. 16-1 at 1].[1]  It stated that he had "several civil claims that he intend[ed] to bring against the City," including "false arrest, violations of civil rights, negligence, intentional infliction of emotional distress, negligence [sic] infliction of emotional distress, defamation, and race/national origin discrimination."  [Id. at 2].

On August 22, 2025, Andrade filed suit against the City in Massachusetts state court.  [ECF No. 2-2 at 3].  On October 10, 2025, he filed the operative amended complaint, asserting claims for violations of his Fourth and Fourteenth Amendment rights under Mass. Gen. Laws ch. 12, §§ 11H & I (Count I); negligence (Count II), and false arrest and false imprisonment (Count III).  [Id. at 3, 5–8].  On November 3, 2025, the City removed Andrade's action to federal court based on federal-question jurisdiction, asserting that Andrade's Count I was "a federal claim against the City for Violations of Civil Rights guaranteed by the Fourth and Fourteenth Amendments."  [ECF No. 2 at 2].[2]  On November 5, 2025, the City filed a motion to dismiss the

---

[1] The Court may consider Andrade's letter, which is referred to in the amended complaint and the authenticity of which is not disputed, in resolving the City's motion to dismiss.  E.g., Carr v. Metro. L. Enf't Council, Inc., No. 13-cv-13273, 2014 WL 4185482, at *1 (D. Mass. Aug. 20, 2014).

[2] Although Massachusetts law provides the cause of action for Andrade's Count I, the City is correct that Andrade's allegation that the City violated his federal constitutional rights brings this claim within this Court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1441(a).  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005); Ortiz-Bonilla v. Federación de Ajedrez de P.R., Inc., 734 F.3d 28, 36 (1st Cir. 2013); Therrien v. Hamilton, 881 F. Supp. 76, 82 (D. Mass. 1995).

amended complaint for failure to state a claim.  [ECF No. 6].  Andrade did not respond to the motion, instead filing a motion for leave to file a second amended complaint, in which he proposed to add the unnamed officers involved in his arrest as John Doe defendants, as well as a claim against the City for violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution (Count IV).  [ECF No. 13]; [ECF No. 13-1].  The City opposed Andrade's motion to amend.  [ECF No. 16].  The Court then ordered Andrade to respond to the City's motion to dismiss and to file any reply to the City's opposition to his motion to amend, [ECF No. 17], which Andrade did, [ECF No. 18].

## II.      LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation modified) (quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)).

The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be "'freely given . . . when justice so requires[,]' . . . absent an apparent or declared reason such as 'futility of amendment.'" Rife v. One W. Bank, F.S.B., 873 F.3d 17, 20–21 (1st Cir. 2017) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Id. at 21 (quoting Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)). In other words, courts apply the same standard in reviewing a motion to amend that has been opposed on futility grounds as in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Glassman, 90 F.3d at 623.

## III.     DISCUSSION

### A.     Massachusetts Civil Rights Act

The operative amended complaint asserts a claim under the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, §§ 11H & I, against the City. [Am. Compl. ¶¶ 15–18]. The City argues, among other things, that it cannot be sued under the MCRA. [ECF No. 7 at 6].

The City is correct. "[U]nder Massachusetts law a municipality cannot be sued under the MCRA." Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir. 2002) (citing Howcroft v. City of Peabody, 747 N.E.2d 729, 744 (Mass. App. Ct. 2001)). Accordingly, the City's motion to dismiss Count I of the amended complaint is granted.

Andrade's proposed second amended complaint asserts an MRCA claim against unnamed John Doe defendants. [ECF No. 13-1 ¶¶ 17–19]. Because the City has not opposed Andrade's

motion to amend as to this claim, see [ECF No. 16], his motion is allowed as to Count I of his proposed second amended complaint.[3]

### B.    Negligence

Both the amended complaint and the proposed second amended complaint assert negligence claims against the City based on the City's alleged negligence in hiring, training, disciplining, and retaining the officers who interacted with Andrade.  [Am. Compl. ¶¶ 19–24]; [ECF No. 13-1 ¶¶ 20–26].  The City argues that Andrade failed to properly present these claims to the City before filing suit, as required by Mass. Gen. Laws ch. 258, § 4.  [ECF No. 7 at 7–8]; [ECF No. 16 at 3–5].  It also argues that Andrade has failed to plead specific facts to support these claims.  [ECF No. 7 at 8–9]; [ECF No. 16 at 5–7].

As to presentment, Mass. Gen. Laws ch. 258, § 4 requires that "a claimant . . . prior to instituting an action against a public employer on a claim for damages, present his claim in writing to the appropriate executive officer of the public employer."  Rodriguez v. City of Somerville, 33 N.E.3d 1240, 1244 (Mass. 2015).  As relevant here, "[a] letter purporting to constitute presentment does not have to be absolutely precise," but it must "identify . . . the legal basis of a plaintiff's claim and must not be so obscure that educated public officials . . . find themselves baffled or misled with respect to whether a claim is being asserted."  Id. (citation modified) (quoting Martin v. Commonwealth, 760 N.E.2d 313, 316 (Mass. App. Ct. 2002)); see

---

[3] The Court is highly skeptical, however, that, as currently pleaded, Count I of Andrade's proposed second amended complaint states a claim under the MCRA.  See, e.g., Degree v. Gendreau, No. 24-cv-10686, 2025 WL 3702535, at *5 (D. Mass. Dec. 19, 2025) (dismissing MCRA claim that failed to plausibly allege "threats, coercion, or intimidation in addition to a constitutional violation" (quoting Santiago v. Keyes, 890 F. Supp. 2d 149,155 (D. Mass. 2012))).  If Andrade wishes to proceed on his MCRA claim against individual defendants, the Court encourages Andrade to plead more detailed facts to support it.

also Murray v. Town of Hudson, 34 N.E.3d 728, 736 (Mass. 2015) (finding presentment requirement satisfied where letter "provided the town with adequate notice of the circumstances of the plaintiff's negligence claim—without limitation to any specific theory of negligence— and . . . the town reasonably could investigate those circumstances and determine whether the town might be liable on the claim under the act").

Here, Andrade's letter satisfies the presentment requirement.  The letter provides the basic facts alleged in his amended complaint:  He was stopped by police officers on November 10, 2024, and the officers forcibly removed him from the passenger seat of the car "without any lawful basis" and used "excessive force in detaining him," handcuffing him "despite his clear compliance."  [ECF No. 16-1 at 1 (emphasis omitted)].  The letter also referred to the "training and practices" of the City's police department and mentioned Andrade's intention to bring "negligence" claims against the City.  [Id. at 1–2].  Accordingly, the letter adequately identified "the legal basis," Rodriguez, 33 N.E.3d at 1244, of Andrade's claim that the City was negligent "in hiring, training, disciplining, and retaining" the officers involved in his arrest, [Am. Compl. ¶ 23].  Contrary to the City's contention, [ECF No. 7 at 8], Andrade was not required to identify "the specific theory of negligence" that he intended to pursue, because his letter "provided the [City] with adequate notice of the circumstances" of his negligence claim and "reasonably" permitted the City to "investigate those circumstances and determine whether [it] might be liable on the claim."  Murray, 34 N.E.3d at 736; see also Firmin v. City of Bos., No. 19-cv-12158, 2021 WL 352376, at *4 (D. Mass. Feb. 2, 2021) (finding presentment requirement satisfied for "failure to train and/or supervise claim" where letter "provided a detailed description of the factual basis" of the claim and alleged that "multiple officers were involved in the violent

7

altercation notwithstanding the fact that [the plaintiff] was 'fully compliant with the officers' instructions and presented no cause' for such violence").

Nevertheless, the City is correct that Andrade has failed to state a claim for negligent hiring, training, discipline, or retention. "To state a claim for negligent hiring and supervision, a plaintiff must allege that the employer knew, or should have known, that the offending employee had a proclivity to commit the complained-of-acts, and that the employer nevertheless failed take corrective action." Czerwienski v. Harvard Univ., 666 F. Supp. 3d 49, 99 (D. Mass. 2023) (citation modified) (quoting Bloomer v. Becker Coll., No. 09-cv-11342, 2010 WL 3221969, at *9 (D. Mass. Aug. 13, 2010)); see also Doe v. Brandeis Univ., 718 F. Supp. 3d 83, 92 n.1 (D. Mass. 2024) ("Massachusetts case law does not meaningfully distinguish between the torts of negligent supervision, retention, training, and hiring."). Here, Andrade alleges "[u]pon information and belief" that the City "knew or should have known through the exercise of reasonable diligence that the Officers were not adequately trained for scenarios such as this," [Am. Compl. ¶ 22], but pleads no facts to support his claim. He does not, for example, "identify any 'red flags' in [the officers'] background or employment history" or "explain how additional training, supervision or management would have prevented, or at least minimized the risk of" the harm he alleges. Murray v. Uber Techs., Inc., 486 F. Supp. 3d 468, 477 (D. Mass. 2020). Without such factual support, the Court is left with mere "labels and conclusions," which are insufficient to overcome a motion to dismiss. Twombly, 550 U.S. at 555. Accordingly, the City's motion to dismiss Andrade's negligence claim is granted. Because Andrade's proposed second amended complaint reasserts his negligence claim against the City using near-identical allegations and does not cure its deficiencies, his motion to amend is denied as futile as to his proposed Count II.

### C.    False Arrest and False Imprisonment

The amended complaint alleges that the City is responsible for the officers' false arrest and imprisonment of Andrade under the doctrine of respondeat superior.  [Am. Compl. ¶ 27].

The City argues that it is immune from liability for false arrest and false imprisonment under Mass. Gen. Laws ch. 258, § 10(c).  [ECF No. 7 at 10].  Andrade does not dispute this argument in his opposition, see [ECF No. 18], and it is correct, see, e.g., Echavarria v. Roach, 565 F. Supp. 3d 51, 98 (D. Mass. 2021); McDonald v. City of Bos., 334 F. Supp. 3d 429, 441 (D. Mass. 2018).  Accordingly, the City's motion to dismiss is granted as to Count III of the amended complaint.

The proposed second amended complaint asserts a near-identical claim for false arrest against unnamed John Doe defendants only.  [ECF No. 13-1 ¶¶ 27–29].  Because the City has not opposed Andrade's motion to amend as to this claim, see [ECF No. 16], his motion is allowed as to Count III of his proposed second amended complaint.

### D.    Constitutional Claims

In his proposed second amended complaint, Andrade alleges that the City violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution. [ECF No. 13-1 ¶¶ 30–32].  The City argues that Andrade's proposed amendment is futile because he fails to state a viable claim under Monell v. Department of Social Services, 436 U.S. 658 (1978), in that he has failed to identify any specific unconstitutional policy or custom of the City that allegedly caused his injuries.  [ECF No. 16 at 7–8].  Andrade counters that he has "allege[d] sufficient facts to establish a policy or custom of the City that caused his purported injuries."  [ECF No. 18 at 3].

9

It is well-established that "[t]here is no direct cause of action by an individual for a constitutional violation; rather, such a claim must be brought under 42 U.S.C. § 1983." Tomaselli v. Beaulieu, 967 F. Supp. 2d 423, 433 n.3 (D. Mass. 2013), aff'd, No. 13-2218 (1st Cir. Dec. 16, 2014). Section 1983 imposes "liability on [cities] that, under color of some official policy, 'cause[]' an employee to violate another's constitutional rights." Monell, 436 U.S. 658 at 692; see also Cosenza v. City of Worcester, MA, 120 F.4th 30, 38 (1st Cir. 2024) ("A municipality may be liable under § 1983 'if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.'" (quoting Connick v. Thompson, 563 U.S. 51, 60 (2011))). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61. Cities cannot, however, be "held liable under § 1983 on a respondeat superior theory," Monell, 436 U.S. at 691; they "are responsible only for their own unconstitutional acts," Cosenza, 120 F.4th at 38 (quoting Bannon v. Godin, 99 F.4th 63, 88 (1st Cir. 2024)). At the pleading stage, "plaintiffs are not required to detail the alleged unconstitutional policies with specificity." Mazza v. City of Bos., 753 F. Supp. 3d 88, 95 (D. Mass. 2024), reconsideration denied, 780 F. Supp. 3d 325 (D. Mass. 2025). Even if the plaintiff's allegations may be "couched in general terms," however, they must "contain sufficient factual content" to satisfy the plausibility pleading standard. Haley v. City of Bos., 657 F.3d 39, 53 (1st Cir. 2011).

Andrade's proposed second amended complaint fails to state a § 1983 claim against the City under Monell. It says nothing at all about a City policy or custom. See generally [ECF No. 13-1]. His bare allegation that the City's "hiring, training, [and] disciplining procedures" were inadequate, [ECF No. 13-1 ¶ 14], is insufficient to state a claim, in the absence of any allegation

that the City was on "notice of persistent and ongoing violations," Haley, 657 F.3d at 51; see also

Brown v. City of Brockton, No. 24-cv-12048, 2025 WL 2677231, at *5 (D. Mass. Sep. 18, 2025)

(dismissing failure-to-train claim because complaint "contain[ed] no specific allegations about

[the city's] training or supervision of its officers, let alone any allegations that municipal

decisionmakers either knew or should have know that this training or supervision was

inadequate").  Accordingly, Andrade's motion to amend is denied as futile as to his proposed

Count IV.

## IV.      CONCLUSION

For the foregoing reasons, the City's motion to dismiss, [ECF No. 6], is **GRANTED**.

Andrade's motion to amend, [ECF No. 13], is **GRANTED IN PART** as to Counts I and III of

his proposed second amended complaint and **DENIED IN PART** as to its remaining counts.

The dismissal of Andrade's claims is without prejudice and with leave to amend.  Any amended

complaint should be filed within fourteen days of this Order.  The Court encourages Andrade to

be thoughtful about which claims he chooses to replead, and to replead only claims for which he

can cure the deficiencies identified in this Order.

**SO ORDERED.**

April 13, 2025                                                   */s/ Allison D. Burroughs*
                                                                ALLISON D. BURROUGHS
                                                                U.S. DISTRICT JUDGE